IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARTEN WILLIAM MOORE,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

6:12-cv-01190-MA

OPINION AND ORDER

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Marten William Moore, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on August 25, 2008, alleging disability due to "[d]isc disease in back, diabetes." Tr. 159. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on December 15, 2010, at which plaintiff was represented by counsel and testified. Vocational Expert (VE) Vernon Arne was also present throughout the hearing and testified.

On January 10, 2011, the ALJ issued a decision denying plaintiff's application. After the Appeals Council denied review, plaintiff timely appealed.

///

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on April 17, 1963, plaintiff was 39 years old on the alleged onset date of disability and 47 years old on the date of the hearing. Plaintiff has a high school education with vocational training in automobile technology, and has past relevant work as an auto mechanic and auto detail manager. Tr. 18, 163.

Plaintiff alleges his disabilities became disabling on July 10, 2002. In addition to the hearing testimony, plaintiff submitted an Adult Function Report and a Pain Questionnaire. Tr. 165-72, 173-75. Plaintiff's primary care provider, Robert Daugherty, M.D., submitted an opinion. Tr. 402-04. DeWayde C. Perry, M.D., examined the plaintiff and submitted an evaluation. Tr. 295-300. Finally, M. Desai reviewed plaintiff's medical records and submitted a Physical Residual Functional Capacity Assessment. Tr. 303-11.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national

3 - OPINION AND ORDER

economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 10, 2002. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 11.

At Step Two, the ALJ determined that plaintiff's morbid obesity, degenerative disc disease of the back, diabetes, and chronic obstructive pulmonary disease are severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 11-12.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 12.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work, including limitations that plaintiff can only perform tasks that involve no more than four hours of standing or walking, and six hours of sitting, in an eight-hour workday, with the option of alternating between sitting and standing as needed; occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and

4 - OPINION AND ORDER

crawl; and can never be exposed to vibration or hazards. Tr. 12-18.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 18.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Wire and Cable Assembly, Electric Motor Assembly, Small Product Assembly, Document Preparer, Optical Worker, and Check Cashier. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 18-19.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises three issues on appeal. First, plaintiff claims that the ALJ improperly rejected his testimony. Second, plaintiff argues that the ALJ provided insufficient reasons for rejecting the opinion of Dr. Daugherty, plaintiff's treating physician. Third, plaintiff argues that the ALJ erred in his consideration of the chart notes of Andrew Kokkino, M.D. Accordingly, plaintiff concludes that the ALJ failed to carry his burden at Step Five.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are

5 - OPINION AND ORDER

supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the

severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that he lives with his parents. Tr. 31. Plaintiff stated that his back pain has worsened as a result of weight gain, and is the primary cause of his inability to work. Tr. 37, 40. Plaintiff additionally testified that his diabetes causes his blood sugar to run high, causing occasional irritability and upset stomach. Tr. 41-42, 53-54. Plaintiff stated that he can walk up to three blocks, and can lift two jugs of milk and a bag of groceries. Tr. 43. As to sitting limitations, plaintiff testified that he cannot sit in one position for a long period of time without pain in his back and leg. Tr.

7 - OPINION AND ORDER

43-44. Plaintiff reported that he can dress himself, but requires the use of a chair in the shower, and getting ready in the morning can take between two and three hours. Tr. 46, 55-56. Plaintiff testified that his parents do most of the chores and errands around their house, but that he will occasionally go shopping and mow the lawn on a riding lawnmower. Tr. 46-47.

Plaintiff described his daily activities as waking between 5:30 and 6:00, letting his cats out and eating a small snack, and then going back to sleep until 7:30 or 8:00, when his mother makes breakfast. Tr. 48. After breakfast, plaintiff watches television or plays computer games, sometimes eats lunch, and returns to watching television or talking with his father. Tr. 49. In the summer, he sometimes mows the lawn. Tr. 49-50. Plaintiff additionally testified that he takes a two-to-three-hour nap daily. Tr. 57. After dinner, plaintiff testified that he watches more television and goes to bed around 11:00. Tr. 50.

In his Adult Function Report, plaintiff described similar activities, but added that two or three times per week he goes to a friend's house in the afternoon to "socialize for a couple hours." Tr. 165, 169. Plaintiff reported that he cooks himself meals two-to-three times per week, but that his mother primarily does the cooking. Tr. 167. Plaintiff stated, however, that he cannot perform any type of household work that requires standing for a long period of time or bending over. Tr. 168. Plaintiff

8 - OPINION AND ORDER

checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, climb stairs, and complete tasks. Tr. 170. Plaintiff stated that he can walk about 100 yards before needing to rest for 10 minutes. Id.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's testimony was nonetheless not credible. Tr. 17. The ALJ rejected plaintiff's testimony because the medical evidence in the record did not fully support plaintiff's very sedentary alleged limitations and activities of daily living, plaintiff stopped working for reasons unrelated to disability and had a poor work record before he allegedly became disabled, he did not comply with prescribed medical treatment, and made inconsistent statements regarding his drug use. Tr. 13-17. I conclude that the ALJ cited clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ reasonably found that the medical record does not support plaintiff's allegations of very significant back limitations dating back to 2002. As the ALJ noted, while there is some discussion of back problems in 2002 and 2003, plaintiff did not complain of back pain to his physicians again until 2009. Even in April and July of 2009, plaintiff's complaints do not appear serious enough to rise to the level of disabling, as they were only mentioned in passing in the chart notes and treated conservatively

9 - OPINION AND ORDER

with ibuprofen and stretching. Tr. 346-47. Only in September of 2009, less than two weeks after plaintiff's claim was denied upon reconsideration, does plaintiff report significant back pain to his physician. Tr. 345. In addition, plaintiff's allegation to a specialist in October of 2009 that he had been experiencing severe back pain radiating into his leg for four-to-six months is belied by his report in July of that year that he "had no radiation into the lower extremities." Compare Tr. 387 with Tr. 346.

Moreover, the medical record reveals that during the lengthy period in which plaintiff was not complaining of back pain, he engaged in activities inconsistent with significant back impairments. For example, in August of 2004, plaintiff reported elbow pain when "lifting wood or other heavy objects." Tr. 248. In January of 2008, plaintiff reported he hurt his chest while working on his car and "leaning on the floor of the car to get into the dashboard." Tr. 356. While, as the ALJ noted, the medical record contains evidence of more significant back problems, the ALJ reasonably concluded that the longitudinal medical record does not support plaintiff's allegations of back impairments dating back to alleged onset date of disability.

The ALJ also cited plaintiff's poor work history and non-disability reason for leaving work as a reason for rejecting plaintiff's testimony. A poor work history or non-disability reason for leaving the job immediately prior to the alleged onset

date are proper reasons for discrediting a plaintiff's testimony. See Burton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (rejecting a claimant's testimony in part because he left a job after being laid off, rather than for health reasons); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (rejecting a claimant's testimony in part because her "work history was spotty"). Although there was some confusion on this point at the hearing, plaintiff reported that he "quit working due to arrest" in 2002. Tr. 36-39, 159. In addition, plaintiff reported inconsistent work prior to his alleged disability in 2002, and his earnings history corroborates that plaintiff was not consistently employed full time before his alleged period of disability. Tr. 153, 160. The ALJ reasonably discounted plaintiff's testimony, in part, because he quit his job prior to the alleged onset date for reasons other than disability and because plaintiff has an inconsistent work history.

The ALJ also discredited plaintiff's credibility because plaintiff was not always compliant with prescribed medical treatment. Noncompliance with prescribed medical treatment is a valid reason to reject a claimant's testimony. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ noted multiple instances of noncompliance. During an April of 2007 hospitalization, plaintiff repeatedly went to the cafeteria and ordered food that was not on his diabetic diet despite admonitions from his doctors. Tr. 264-65. In December of 2008, plaintiff left

11 - OPINION AND ORDER

a prescribed sleep study within minutes against medical advice. Tr. 375. Additionally, despite a recommendation from Dr. Kokkino that plaintiff engage in a course of physical therapy and weight loss to help with his back pain, plaintiff admitted at the December 5, 2010 hearing that he had not had any physical therapy since 2003. Tr. 50, 226-31, 387. The ALJ reasonably discredited plaintiff's testimony because he demonstrated noncompliance with medical treatment on multiple occasions.

Finally, the ALJ discredited plaintiff's testimony because he made inconsistent statements to doctors and at the hearing about when he ceased using methamphetamine. On October 3, 2002, plaintiff reported to his doctor that he stopped using methamphetamine two months prior. Tr. 252. At the hearing, however, plaintiff admitted that he continued using methamphetamine for some period after his 2002 arrest, but that he quit before his period of probation was completed. Tr. 51-52. Yet, during his April of 2007 hospital visit, plaintiff admitted to continuing use of methamphetamine, and injecting drugs one-to-three months prior. Tr. 271. The ALJ reasonably cited these inconsistencies in making an adverse credibility finding. I conclude that these reasons, taken together, constitute clear and convincing reasons to reject plaintiff's subjective symptom testimony. The ALJ properly discredited plaintiff's testimony.

///

12 - OPINION AND ORDER

## II. Rejection of Dr. Daugherty's Opinion

Plaintiff next argues that the ALJ improperly rejected the opinion of Dr. Daugherty, plaintiff's treating physician. Generally, more weight is given to the opinion of a treating physician than to the opinion of doctors who did not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Id. at 830-31. Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id.

"'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.

2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

Dr. Daugherty submitted an opinion listing degenerative disc disease, diabetes, obesity, and depression as plaintiff's diagnoses. Tr. 402. Dr. Daugherty described plaintiff's symptoms as "back pain with radiation to lower extremity - to level of toes." Id. After describing the clinical findings that support the diagnoses, Dr. Daugherty opined that plaintiff would have to lay down or rest for 20 to 30 minutes three to four times per day. Tr. 403. Dr. Daugherty, however, checked that he did not know how much plaintiff could stand, walk, or sit during a normal workday, but that plaintiff could only lift 10 pounds occasionally. Tr. 404. Finally, Dr. Daugherty opined that plaintiff would miss more than two days of work per month, explaining that plaintiff "could not perform a physical job of 8 [hours per day]." Id.

Because Dr. Daugherty's opinion was contradicted by that of Drs. Perry and Desai, the ALJ was required to cite specific and legitimate reasons to reject his opinion. Lester, 81 F.3d at 830-31. The ALJ rejected Dr. Daugherty's opinion because the opinion relied on plaintiff's subjective report of symptoms, the opinion is conclusory, and is unsupported by record evidence. Tr. 17. As an initial matter, I note that much of Dr. Daugherty's opinion is not inconsistent with the RFC. Dr. Daugherty did not opine on plaintiff's sitting, standing, or walking limitations. Moreover,

14 - OPINION AND ORDER

the ALJ reasonably concluded that Dr. Daugherty's opinion that plaintiff would be off schedule more that two days per month was qualified by his handwritten explanation in that section that plaintiff "could not perform a *physical* job of 8 [hours per day]." Tr. 17, 404 (emphasis added). Plaintiff's inability to perform physical work, however, was reasonably accounted for in the RFC's limitation of plaintiff to less than the full range of light work.

The only functional limitations in Dr. Daugherty's opinion that conflict with the RFC, then, are his limitation of plaintiff to lifting no more than 10 pounds on an occasional basis and the requirement that plaintiff rest for 20 to 30 minutes, three to four times per day. Tr. 404. I conclude that the ALJ's stated reasons for rejecting Dr. Daugherty's opinion apply to the lifting limitation, but not the resting limitation.

Unlike Dr. Daugherty, the RFC limited plaintiff to lifting 20 pounds occasionally, and 10 pounds frequently. Tr. 12. The ALJ's explanation that Dr. Daugherty's opinion was not consistent with other evidence in the record, however, provides ample justification for rejecting this opined limitation. Indeed, Dr. Daugherty's limitation to lifting no more than 10 pounds is contradicted by plaintiff's own testimony. At the hearing, plaintiff testified that he could lift two jugs of milk, an amount greater than the limitation opined by Dr. Daugherty. Tr. 43. In addition, after the alleged onset date of disability, plaintiff reported to

15 - OPINION AND ORDER

physicians that he hurt his elbow "lifting wood or other heavy objects," and that he had been working on his car. Tr. 248, 356. The ALJ reasonably cited inconsistency with the record to reject Dr. Daugherty's opined lifting limitation.

The ALJ erred in his consideration of Dr. Daugherty's opinion that plaintiff must rest for 20 to 30 minutes three to four times per day. The ALJ's reasons for rejecting Dr. Daugherty's opinion are not relevant to this finding. It is neither reliant on plaintiff's subjective reports nor unsupported by clinical findings and the remainder of the medical record. Rather, it is corroborated by the imaging cited in the opinion, and was stated by Dr. Daugherty in terms that make clear he was not merely relying on plaintiff's self-reporting. Nor, for similar reasons, can I conclude that the ALJ's stated reasons apply to Dr. Daugherty's opinion more generally. It is clear from his opinion that Dr. Daugherty considered objective evidence and clinical findings, which he cited appropriately, and accordingly had some support in the record. Thus, the ALJ erred in his consideration of Dr. Daugherty's opinion.[1]

///

---

[1] Defendant's argument that the ALJ's citation to Dr. Perry's evaluation and Dr. Desai's review was sufficient to reject Dr. Daugherty's opinion is meritless. Because a treating physician is generally given greater weight than an evaluating or reviewing physician, the ALJ was required to cite additional reasons for favoring Drs. Perry and Desai over Dr. Daugherty.

16 - OPINION AND ORDER

### III. Consideration of Dr. Kokkino's Chart Note

Plaintiff next argues that the ALJ erred in his consideration of Dr. Kokkino's chart note summarizing plaintiff's October 28, 2009 visit. Because this is a chart note, and not an opinion as to plaintiff's functional limitations, Dr. Kokkino's note did not require any individual treatment from the ALJ. Rather, so long as the ALJ's decision is supported by substantial evidence in light of Dr. Kokkino's chart note, as well as the rest of the evidence in the record, then the ALJ must be affirmed in this respect.

Dr. Kokkino noted that imaging indicated that plaintiff had "quite a bit of spinal pathology," which Dr. Kokkino thought lead to plaintiff's "current lack of sensation and impairment in the left lower extremity." Tr. 387. Because Dr. Kokkino considered plaintiff a high risk surgical candidate, he recommended a course of physical therapy and a "serious weight loss regimen." Id. Dr. Kokkino did not opine as to any functional limitations.

The ALJ explicitly considered Dr. Kokkino's chart note and findings in crafting the RFC. Tr. 15-16. The ALJ accounted for Dr. Kokkino's diagnoses at Step Two and crafted the RFC to accommodate plaintiff's back impairments. While Dr. Kokkino noted significant findings in his chart note, the ALJ also included significant functional limitations in the RFC. There is nothing in Dr. Kokkino's opinion that deprives the ALJ's RFC determination of the support of substantial evidence. The ALJ properly considered

17 - OPINION AND ORDER

Dr. Kokkino's chart note along with the rest of the record evidence.

Because I conclude that the ALJ improperly rejected Dr. Daugherty's opinion, but properly rejected plaintiff's testimony and considered Dr. Kokkino's chart note alongside other record evidence, I ultimately agree with plaintiff that the ALJ failed to carry his burden at Step Five.

## IV. Remand

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Id. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

It is not clear what effect Dr. Daugherty's opined resting limitation would have on the ultimate disability determination, as it is unclear if such a limitation could be accommodated in the workplace. Accordingly, there are outstanding issues that must be resolved before a determination of disability can be made, and remand is necessary.

On remand, the ALJ must reconsider Dr. Daugherty's opinion. If the ALJ accepts Dr. Daugherty's opinion, or portions thereof, he should revise the RFC accordingly and obtain additional VE testimony. If the ALJ once again rejects Dr. Daugherty's opinion, he must cite legally sufficient reasons for doing so.

///
///
///
///
///
///
///
///
///

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __9__ day of August, 2013.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge